UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRENDA HAYDEN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2540** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION "B" (3)** |

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I.     BACKGROUND**

Plaintiff filed an application for a period of disability and DIB on July 20, 2012, alleging a disability onset date of March 16, 2012. (Adm. Rec. at 9, 105). Plaintiff alleged disability due to a heart condition and nerves. (*Id.* at 127). Plaintiff, born on December 9, 1957, was 54 years old on the date on which she alleged disability and 55 years old at the time of the final administrative decision. (*Id.* at 105). Plaintiff has a high school education. (*Id.* at 1). Plaintiff has past work experience as a bank clerk. (*Id.* at 1).

Defendant initially denied plaintiff's application on October 25, 2012. (*Id.* at 9). Plaintiff

sought an administrative hearing, which defendant held on August 12, 2013. (*Id.* at 27-49). Plaintiff and a vocational expert ("VE"), Patricia Knight, testified at the hearing.

On September 19, 2013, the administrative law judge ("ALJ") issued a decision in which she found that plaintiff had not been disabled through the date of the decision. (*Id.* at 9-17). In the decision, the ALJ concluded that plaintiff has the severe impairments of ischemic heart disease with hypertension status post coronary artery stent procedure and sleep-related breathing disorder. (*Id.* at 11). The ALJ held that plaintiff does not have an impairment that meets or medically equals a listed impairment under the regulations. (*Id.* at 14). The ALJ found that plaintiff retains the residual functional capacity ("RFC") to perform the full range of light work activity as defined in 20 C.F.R. § 404.1567(b) with occasional lifting and carrying of up to 20 pounds, frequent lifting and carrying of up to ten pounds, standing and/or walking for up to six hours during an eight-hour day, and sitting for up to six hours total during an eight-hour day. (*Id.* at 14-15). The ALJ concluded that plaintiff can perform her past relevant work as a customer service representative and collections clerk. (*Id.* at 16). The ALJ thus denied plaintiff DIB. (*Id.* at 17).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she is not disabled. (*Id.* at 104). On September 18, 2014, the Appeals Council denied plaintiff's request. (*Id.* at 1-5). Plaintiff then timely filed this civil action.

## II.    STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate

the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).   It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d  698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992).  Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Carey,* 230 F.3d at 135.  Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555.  Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

**III.     ENTITLEMENT TO BENEFITS UNDER THE ACT**

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if her physical or mental impairment is so severe that she is unable to do not only her previous work, but can not, considering her age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which she lives, whether a specific job vacancy exists, or whether she would be hired if she applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a

> five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make her disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

**IV.    ISSUE ON APPEAL**

There is one issue on appeal:

> (1) Whether substantial evidence supports the ALJ's RFC determination, specifically, that plaintiff is not limited to simple, repetitive tasks.

## V. ANALYSIS

### 1. Whether substantial evidence supports the ALJ's RFC determination, specifically, that plaintiff is not limited to simple, repetitive tasks.

Plaintiff contends that she is limited to simple, repetitive tasks, and the ALJ erred when she failed to include such a limitation in her RFC assessment. It is well-established law that a plaintiff's subjective complaints must be corroborated, at least in part, by objective evidence. *See Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991). For her part, the Commissioner maintains that substantial evidence in the record supports the ALJ's RFC determination, which is based on plaintiff's own testimony and the medical evidence in the record. (Adm. Rec. at 11-16).

The ALJ considered plaintiff's alleged mental impairments and found them to be non-severe. Specifically, she concluded that there were no limitations in activities of daily living, a mild limitation in social functioning, a mild imitation in concentration, persistence, or pace, and no episodes of decompensation. (*Id.* at 13-14); *see also* Social Security Rule ("SSR") 96-8p, 1996 WL 374184 (noting that limitations identified in using the psychiatric review technique are not an RFC assessment but are used to rate the severity of a claimant's mental impairment(s) at steps two and three). Plaintiff points the Court to the consultative examination report completed by James Smith, Ph.D., to support her claim that she is limited to simple, repetitive tasks. The ALJ considered Smith's report and gave great weight to his finding of "no significant signs of mood or anxiety related interference with social interaction or task performance." (*Id.* at 14, 260). The ALJ further noted that to the extent that Smith's functional statement describes attention and decision-making

ability in terms of simple tasks, this conclusion can not reasonably be interpreted as an accurate limitation of plaintiff's capacity, given the absence of clinical indications by Smith and plaintiff's actual activities of daily living. (*Id.* at 14, 259-260). When only part of a physician's opinion is supported by the record, it is appropriate for an ALJ not to afford weight to the unsupported part of the opinion. *Kirksey v. Shalala*, 21 F.3d 1109 (5th Cir. 1994).

Plaintiff maintains that Smith did in fact make clinical indications, citing to his opinion that she was anxious and depressed and called her memory into question. Smith, however, found no signs of hyperactivity or agitation, good eye contact, logical thought process, and speech that was coherent, organized, and relevant to the content of the conversation. (*Id.* at 259). Smith found that plaintiff understood all of the matters that he discussed with her, was able to comply with all of his requests, and was able to follow instructions on all tasks. (*Id.*). Plaintiff was able to follow a three-stage set of verbal instructions, her articulation was intelligible and her expressive language skills were good, and she could initiate and sustain conversations on topics of interest. (*Id.*). She was able to recall three of three unrelated items immediately and two items after five minutes; she was able to recall an address immediately but unable to recall it after five minutes. (*Id.*). She was able to recall the examiner's name and the office address in detail; she was able to recall her social security number correctly; she was a good historian and was able to recall details of events about which she was questioned. (*Id.*). Her performance suggested adequate memory and adequate attention and concentration. (*Id.* at 259-260). Thus, despite Smith's opinion that plaintiff had the ability to maintain attention and perform simple, repetitive tasks, the ALJ found an absence of clinical indications to support such a conclusion and noted that this was inconsistent with her actual

activities of daily living. (*Id.* at 14).

Plaintiff's daily activities include taking care of her son, arranging for his care, driving approximately 100 miles round trip four times a week to take her son to therapy, and actually caring for his needs at home. (*Id.* at 14, 32-35, 38).[1] In addition, plaintiff performs all of the household chores and maintains relationships with friends and relatives. (*Id.* at 14, 38, 40, 259). Plaintiff contends that the ALJ mischaracterizes her daily activities, stating that when she drives her son to therapy, she sleeps in the car when he is in therapy and then goes to sleep when she gets home, and her son is cared for by a sitter 24 hours a day. However, and as the ALJ noted, while plaintiff states that she would sleep in the car while waiting for her son in therapy, this does not negate the fact that she testified that she gets him ready and drives him 50 miles each way to therapy four times a week. (*Id.* at 15, 32, 38). Plaintiff testified that the ALJ's decision did not mention the fact that she sleeps in the car and then goes back to sleep when she gets home. The ALJ noted, however, that plaintiff is able to rest in the van for 30 to 60 minutes while her son is in therapy and when they get home, she gets him settled with the sitter and then rests for 30 minutes. (*Id.* at 15, 38).

Plaintiff also testified that she gets up in the morning, gets dressed, goes over to her son's trailer next to her house, gets him ready to go on the trip, drives him 50 miles, goes out to the van to rest while he is in therapy, drives him back, helps get him situated, and then goes and tries to rest. (*Id.* at 38). While plaintiff has a sitter who helps take care of her son, she testified that she assists in that care as well and in fact resigned from her customer service job at a bank where she had worked for almost 13 years to take care of her son. (*Id.* at 15, 33-35, 138, 259). Unemployment for

---

[1] Plaintiff's son was involved in a motor-vehicle accident.

reasons other than disability, such as economic reasons, will not support a claim for disability benefits. *See Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988). Plaintiff cites to her Function Report to show that her son is cared for by a sitter 24 hours a day. In this report, plaintiff also states that her daily activities including helping to take care of her son, feeding him, giving him medicine, taking care of all of his needs, washing clothes and dishes, plus household duties and providing total care for her son. (*Id.* at 138). Any "inconsistencies between [plaintiff's] testimony about [her] limitations and [her] daily activities were quite relevant in evaluating [her] credibility." *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990). "It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status." *Leggett*, 67 F.3d at 565 n.12. The medical evidence and evidence of plaintiff's significant daily activities fully support the ALJ's RFC assessment. "[A] fact finder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa*, 895 F.2d at, 1022, 1024. Such evidence exists here.

    Plaintiff also argues that the ALJ did not address the examination findings and observations of the DDS interviewer, the social worker at Rosenblum Mental Health Center, and the examination of psychiatrist Muhammad Ahmed, M.D. A review of the ALJ's opinion, however, reveals that she considered plaintiff's mental health clinic records, which included those records from Ahmed and the social worker at the Rosenblum Mental health Center. (*Id.* at 14, 16, 383-404). The ALJ concluded that the report of the consultative examiner and the mental health clinic records reflected the ability to perform household chores and maintain relationships with friends and relatives. (*Id.* at 14). In addition, to the extent that plaintiff's symptoms can be seen as worsening at the time she

initiated treatment at the Rosenblum Mental Health Center in mid-2013, the ALJ found no evidence to indicate that a significant limitation of functioning was expected with treatment. (*Id.* at 16). To the contrary, the ALJ found that plaintiff had only recently started counseling and treatment at the Rosenblum Mental Health Center which is intended to help her cope with the anxiety and depression that she suffers following her son's motor-vehicle accident. (*Id.* at 16). Her treatment plan notes that her coping skills are increasing, she is engaged in treatment, she has the support for treatment from family and friends, as well as health insurance, and she is motivated to improve her overall health and increase her ability. (*Id.* at 16, 395). The ALJ is not required to incorporate any specific limitations into her RFC assessment simply because it appears in a medical opinion. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The ALJ may choose whichever physician's diagnosis is most supported by the record, and may incorporate into the RFC assessment the limitations supported by that diagnosis or diagnoses. *Id.*

Plaintiff also argues that Ahmed assessed her with a Global Assessment of Functioning ("GAF") of 50, indicating a serious impairment. Smith, however, noted a GAF of 65, indicating only mild problems and generally satisfactory functioning. (*Id.* at 12, 261); *see* Diagnostic and Statistical Manual of Mental Disorders IV ("DSM-IV-TR"), p. 34 (4th ed. Text Revision 2000). In any event, the GAF scale is not necessarily determinative of a claimant's ability to work and should not be viewed in isolation and without regard to other evidence in the record. *See Didlake v. Barnhart*, No. 4:02-CV-690-Y, 2003 U.S. Dist. LEXIS 21419, *30-31 (N.D. Tex. Sept. 3, 2003), adopted by *Didlake v. Barnhart*, 2003 U.S. Dist. LEXIS 21418 (N.D. Tex. Oct. 29, 2003). The GAF scale does not directly correlate to an individual's ability or inability to work. *See Hill v. Astrue*, No.

H-08-3160, 2009 WL 2901530 at *7 (S.D. Tex. Sept. 1, 2009) (citing 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000)).

Plaintiff argues that the DDS interviewer, and the social worker and psychiatrist at Rosenblum Mental Health Center stated that she is depressed. While plaintiff argues that she suffers from depression, diagnosis alone is insufficient proof of a disability and is merely part of the evidence that the ALJ must consider. *See Johnson v. Sullivan*, 894 F.2d 683, 685 (5th Cir. 1990). Plaintiff does not meet her burden of proof and present objective medical evidence that demonstrates that this is a severe impairment, or that it caused limitations more severe than the ALJ found in her RFC assessment. In fact, it does not appear that plaintiff disputes the ALJ's finding that her depression was not severe, but rather that the RFC did not include a limitation to simple, repetitive tasks. Her claim of error lacks merit.

Lastly, plaintiff contends that the Appeals Council incorrectly found that new evidence submitted after the hearing by psychiatrist Ann Arretteig, M.D., and dated September 4, 2014, did not provide a basis for changing the ALJ's decision. Arretteig filled out a Mental Residual Functional Capacity form ("MRFC") in which she merely checked off boxes concerning specific categories with little analysis or explanation. In fact, with the exception of the section entitled "Adaption," when asked to explain her findings, Arretteig left the spaces blank. The only explanation provided on the form was Arretteig's statement that the "client struggles with depression, labile moods, tearfulness, anxiety, all of which compromise her ability to focus and attention to detail." Plaintiff presents the Court with no treatment notes from Arretteig. This Court has often noted that forms unaccompanied by in-depth analysis are entitled to little weight. *See*

*Foster v. Astrue*, 410 Fed. Appx. 831, 833 (5th Cir. 2011) (finding good cause to assign little weight to a treating physician's questionnaire opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations . . . ."). A conclusory opinion of disability intrudes on an area reserved to the Commissioner, and the ALJ may reject such an opinion without referring to the factors used to evaluate a typical medical opinion. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). In fact, such conclusory opinions are not medical opinions, and thus have "no special significance." *Frank*, 326 F.3d at 620.

     Plaintiff maintains that Arretteig's opinion contradicts the ALJ's finding that her depression can improve with treatment. But there is no indication of when, or if, Arretteig ever treated plaintiff. Plaintiff merely states that Arretteig is part of the team that treats her but never mentions this treatment in her description of the medical evidence. Neither does she cite to Arretteig's treatment notes anywhere in her initial brief or supplemental motion. Plaintiff herself argues that the Appeals Council erred in rejecting this evidence based on the fact that it pertained to a later time period than the time period at issue in this case. Plaintiff characterizes Arretteig's opinion as "a retrospective medical opinion that pertains to [plaintiff's] functioning during the time she was treated at Rosenblum." Thus, it does not negate the ALJ's finding that plaintiff's treatment, which she did not start until mid-2013, can improve her condition. (*Id.* at 18, 20). In fact, in August 2013, after she had started seeking treatment at the Rosenblum clinic, a social worker at the clinic noted that plaintiff's coping skills were increasing, and plaintiff reported struggling with the non-covered cost of her son's care, talking with a cousin and a friend, and listening to music. (*Id.* at 17, 397). Thus, even if the Appeals Council erred in their conclusion that this new evidence pertained to a

later time period, such an error is harmless, as this medical opinion does not change the ALJ's conclusion. In order for newly submitted evidence to justify a remand, evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. *Leggett*, 67 F.3d at 567. In addition, the new evidence must also pertain to the contested time period and not merely concern a subsequently-acquired disability or the deterioration of a condition that was not previously disabling. *Id.* (holding that case would not be remanded for consideration of new evidence consisting of evaluations by psychiatrists). The Court finds that Arretteig's opinion does not support a remand in this case as it does not relate to the time period under consideration by the ALJ.

Accordingly, based on the objective medical evidence, plaintiff's assertions, and evidence of her own daily activities, the ALJ questioned plaintiff's credibility and found that she retained the ability to perform some level of full-time work within the RFC determination set forth above. The ALJ properly weighed the evidence in determining plaintiff's RFC. This Court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey*, 230 F.3d at 135. That there is evidence in the record to support plaintiff's position is of no moment. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas*, 503 U.S. at 112-13. Conflicts in the evidence are for the Commissioner to resolve, not this Court. *Carey,* 230 F.3d at 135. Thus, the ALJ properly determined, at step four, that plaintiff can perform her past relevant work. As a result, plaintiff's argument that she is disabled under the Medical-Vocational Guidelines is foreclosed, as this determination is made a step five. *See Harper v. Sullivan*, 887 F.2d

92, 97 (5th Cir.1989) (holding that the grids are applied only when it is found that the claimant is incapable of performing past relevant work). Substantial evidence supports the ALJ's conclusions here.

## VI. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 2nd day of November, 2015.

                                                **DANIEL E. KNOWLES, III**
                                                **UNITED STATES MAGISTRATE JUDGE**