## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

BRENDA HAYDEN                                    CIVIL ACTION

VERSUS                                           NO. 14-2540

SOCIAL SECURITY ADMINISTRATION                   SECTION "B"(3)

### ORDER AND REASONS[*]

Before the Court are: cross-motions for summary judgment, the Magistrate's Report and Recommendation ("R&R"), and Plaintiff's Objections thereto. (Rec. Doc. 21). Plaintiff, Brenda Hayden, objects to the R&R, which recommends denial of her motion for summary judgement and granting of the Social Security Administration's ("SSA") motion for summary judgment.

**IT IS ORDERED** that Plaintiff's Objections to the Magistrate Judge's R&R (Rec. Doc. 21) are **OVERRULED.**

**IT IS FURTHER ORDERED** that the Magistrate's R&R (Rec. Doc. 20) is **ADOPTED.**

**IT IS FURTHER ORDERED** that the SSA's motion for summary judgment (Rec. Doc. 19) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Rec. Doc. 12) is **DENIED.**

---

[*] We are grateful for work on this case by Maja Sherman, a Tulane University Law School extern with our Chambers.

1

## I. PROCEDURAL HISTORY

On July 20, 2012, Plaintiff filed an application for a Period of Disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, alleging a disability beginning on March 16, 2012 due to coronary artery disease and a sleep-related breathing disorder. (Rec. Doc. 9 at 105, 127). After her application was denied, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 12, 2013. (Rec. Doc. 9 at 27). On September 19, 2013 ALJ Joan H. Dean issued a decision denying Plaintiff's application for DIB. (Rec. Doc. 9 at 11). Plaintiff sought timely review of the ALJ's denial. (Rec. Doc. 9 at 114). On September 18, 2014, the Appeals Council denied Plaintiff's request. (Rec. Doc. 9 at 1-5). The ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner") for the purposes of this Court's review.

Plaintiff then sought review of Defendant's, Commissioner Carolyn W. Colvin, final decision denying Plaintiff's claim for DIB under Title II of the Social Security Act and filed a civil action pursuant to Title 42 U.S.C. 405(g). (Rec. Doc. 20 at 1). On November 2, 2015, United States Magistrate Judge Daniel E. Knowles III recommended that Plaintiff's complaint be dismissed with prejudice. (Rec. Doc. 20 at 1).

## II. FACTS OF THE CASE

### i. Factual Background

Plaintiff is a fifty-seven-year-old woman. (Rec. Doc. 9 at 105). Plaintiff was fifty-four years old on the alleged onset date of her alleged disability. Plaintiff graduated high school, completed two years of college, and worked previously as a bank clerk. (Rec. Doc. 9 at 127-28). The vocational expert ("VE") classified Plaintiff's work experience as "customer service." (Rec. Doc. 9 at 45).

Plaintiff suffers from coronary artery disease status post-stent-placement, hypertension, a sleep-related breathing disorder, major depressive disorder, and generalized anxiety disorder. (Rec. Doc. 9 at 195, 237, 308, 316). In March 2011, Plaintiff's primary care physician, Derris Ray, M.D. ("Dr. Ray"), prescribed Xanax. (Rec. Doc. 9 at 190). In July 2012, Dr. Ray increased Plaintiff's Xanax dosage due to stress caused by caring for her bed-ridden son. (Rec. Doc. 9 at 190). In July 2012, a disability determination service ("DDS") interviewer observed that Plaintiff seemed anxious and depressed and "had difficulty with understanding and coherency." (Rec. Doc. 9 at 124). In September 2012, a non-examining state agency consultant, Pamela Martin, Ph.D. ("Dr. Martin"), indicated that Plaintiff had pre-existing mental health conditions that intensified after taking care of her son in his

3

semi-comatose state. This development required a psychological consultative examination. (Rec. Doc. 9 at 255).

In October 2012, psychologist James Smith, Ph.D. ("Dr. J. Smith"), performed a psychological consultative examination of Plaintiff on behalf of DDS. (Rec. Doc. 9 at 256-61). Examination of the Plaintiff revealed adequate attention and concentration levels, cognitive abilities, and judgment, but also showed a depressed and anxious quality compounded with difficulty remembering things after five minutes had passed. (Rec. Doc. 9 at 259). Dr. J. Smith felt that Plaintiff was an "honest, candid, and reliable informant" and ultimately diagnosed her with major depressive disorder and generalized anxiety disorder. (Rec. Doc. 9 at 260).

In May 2013, Plaintiff established care at Rosenblum Mental Health Center (RMHC) where licensed social worker, Felicia Smith, LCSW ("F. Smith"), evaluated her. (Rec. Doc. 9 at 386-89). Upon examination, F. Smith found that Plaintiff's speech was soft, her mood was depressed, and her affect was tearful. (Rec. Doc. 9 at 389). F. Smith diagnosed major depressive disorder with a Global Assessment of Functioning ("GAF") of 50. (Rec. Doc. 9 at 389).

In July 2013, psychiatrist Muhammad Ahmed, M.D. ("Dr. Ahmed") of RMHC evaluated Plaintiff. (Rec. Doc. 9 at 383). Dr. Ahmed noted that Plaintiff's son had a brain injury and was living in the

4

trailer next to hers with a twenty-four-hour babysitter. (Rec. Doc. 9 at 383). Upon examination, Dr. Ahmed found that Plaintiff's symptoms included, a constricted affect, a depressed mood, as well as fair concentration, intellect, insight and judgment. (Rec. Doc. 9 at 384). Dr. Ahmed diagnosed Plaintiff with major depressive disorder, recurrent and severe. (Rec. Doc. 9 at 384). Dr. Ahmed prescribed Trazodone 50mg at bedtime and Sertraline 50mg daily and assigned a GAF of 50. (Rec. Doc. 9 at 384-85).

In August 2013, VE, Patricia Knight, testified that Plaintiff's past jobs were in the "customer service"[1] field. (Rec. Doc. 9 at 45). The VE testified that Plaintiff could perform her past work as a bank clerk in which she was lifting and carrying twenty pounds maximum occasionally, lifting and carrying ten pounds frequently, and sitting six hours during an eight-hour day. (Rec. Doc. 9 at 46). The VE also testified that the Plaintiff could perform the duties of a collection clerk position including lifting and carrying ten pounds maximum occasionally, lifting and carrying lesser amounts more frequently, and standing and walking six hours in an eight-hour day. (Rec. Doc. 9 at 46). The VE, however, testified that Plaintiff would be unable to "maintain attention, concentration and pace" for more than four hours of an eight-hour day. (Rec. Doc. 9 at 46). More specifically, the VE testified that

---

[1]A light, skilled job. (Rec. Doc. 12-2 at 6).

Plaintiff would have trouble maintaining concentration if Plaintiff was responsible for occasional carrying, lifting, sitting and standing for six hours out of an eight-hour day. (Rec. Doc. 9 at 46). Thus, Plaintiff would be unable to perform her past work. (Rec. Doc. 9 at 47). In other words, the VE testified that Plaintiff was limited to performing simple, repetitive tasks, or unskilled work, and therefore Plaintiff had no transferable skills. (Rec. Doc. 9 at 47).

In September 2014, psychiatrist Ann Arretteig, M.D. ("Dr. Arretteig"), of RMHC completed a Mental Residual Functioning Capacity ("MRFC") Assessment. The Magistrate found that Plaintiff never demonstrated that Dr. Arretteig was a treating physician. (Rec. Doc. 20 at 11). Also, the Magistrate found that Dr. Arretteig's opinion did not relate to the time period under consideration by the ALJ. (Rec. Doc. 20 at 13). Thus, this Court need not consider Dr. Arretteig's opinion. (Rec. Doc. 20 at 13).

## ii. Plaintiff's Testimony

At the hearing in front of the ALJ on August 12, 2013, Plaintiff testified that she drove her son to speech, physical and occupational therapy Monday through Thursday in a wheelchair van. (Rec. Doc. 9 at 32-33). Plaintiff testified that her son had been in a car accident, was bed-ridden, could not talk, could not walk, and required a feeding tube. (Rec. Doc. 9 at 33). Plaintiff

6

explained that her son lived in a trailer next to her and her husband, and that they had sitters to care for him. (Rec. Doc. 9 at 33).

Plaintiff expressed that her last day of work was March 8, 2012. (Rec. Doc. 9 at 34). She testified that she was a customer service representative at First Bank and Trust for thirteen years. (Rec. Doc. 9 at 34). Plaintiff stated that she resigned from First Bank and Trust in order to care for her son. (Rec. Doc. 9 at 35).

Plaintiff stated that she was unable to focus, that some days she was too depressed to get out of bed, that she could not concentrate, and that she had trouble remembering things. (Rec. Doc. 9 at 35). Plaintiff said that she slept while her son was in therapy, and that she went back to sleep after getting home from therapy. (Rec. Doc. 9 at 38). Plaintiff testified that she was able to grocery shop but did not clean. (Rec. Doc. 9 at 38). Plaintiff's testimony also reflected that she had a cleaning lady to assist her with cleaning the house, did very few house chores, and did not cook frequently. (Rec. Doc. 9 at 39, 44). Plaintiff noted that she tried to find a private psychiatrist, but had to go to RMHC due to insurance restrictions and out-of-pocket payments for her son's twenty-four-hour care. (Rec. Doc. 9 at 42-43). Finally, Plaintiff's testimony reflected that she had trouble

sleeping and woke frequently during the night. (Rec. Doc. 9 at 44).

**III.  CONTENTIONS**

**i. Contentions of Plaintiff**

On November 16, 2015, Plaintiff timely filed objections to the Magistrate's R&R. (Rec. Doc. 21). Plaintiff asserts that "[t]he R&R's conclusion that the AlJ's decision should be upheld because substantial evidence supports the decision, is legally incorrect because the ALJ did not apply proper legal standards." (Rec. Doc. 21 at 4). Plaintiff contends that "substantial evidence does not support the ALJ's and the R&R's findings that [Plaintiff's] depression is not severe and that she is not limited by it." (Rec. Doc. 21 at 3). Plaintiff argues that even if her depression is found to be non-severe, "when an individual's medically determinable non-severe impairment causes limitations, those limitations must be included in the RFC." 20 C.F.R. § 416.945(e).[2] (Rec. Doc. 21 at 4). In other words, Plaintiff contends that, because the ALJ did not include any of the mental limitations in the Residual Functional Capacity ("RFC"), the ALJ incorrectly found that Plaintiff's mental impairment was non-severe. (Rec.

---

[2] "When you have severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those listed as impairment . . . , we will consider the limiting effects of all of your impairments, even those that are not severe, in determining your residual functional capacity." 20 C.F.R. § 416.945(e).

Doc. 21 at 5). Plaintiff asserts that those limitations caused by her non-severe mental impairment "must be included in the RFC because they may be critical to the outcome of [the instant] claim, since when combined with [her] other limitations, they may narrow the range of other work that [she] is able to do." (Rec. Doc. 21 at 5).

**ii. Contentions of Opposition**

On December 12, 2015, the Government responded to Plaintiff's Objections. (Rec. Doc. 20 at 1). The Government opposes Plaintiff's Objections and urges this Court to adopt the Magistrate's R&R. (Rec. Doc. 22). First, the Government asserts that Plaintiff raised just one issue in her initial brief as to whether substantial evidence supported the ALJ's finding that Plaintiff was not limited to simple, repetitive tasks. (Rec. Doc. 22 at 1). The Government contends that Plaintiff simply reiterates this argument, which has already been considered and rejected by the Magistrate. (Rec. Doc. 22 at 1). Second, the Government asserts that Plaintiff again tries to rely on Dr. Arretteig's testimony in support of her argument that she is limited to simple, repetitive tasks. (Rec. Doc. 22 at 1). The Government emphasizes that the Magistrate already determined that Plaintiff never showed that Dr. Arretteig was a treating physician, thus Dr. Arretteig's opinion did not negate the ALJ's findings that "treatment could improve her condition."

(Rec. Doc. 22 at 1). The Government contends that such re-urging of previously made allegations are reviewed only for plain error (Rec. Doc. 22 at 2). Third, the Government asserts that Plaintiff makes several new arguments in regard to the severity of her impairment, which were not made in her initial brief. (Rec. Doc. 22 at 2). Plaintiff's new arguments include: (1) that the ALJ was "playing doctor" in finding that Plaintiff's depression was non-severe; (2) the State Agency Consultant's opinion should not have been assigned great weight; and (3) even if Plaintiff's depression was not severe, limitations to simple, repetitive tasks should have been included in the RFC. (Rec. Doc. 22 at 2). Given United States Court of Appeals for the Fifth Circuit precedent, the Government contends that this Court should not consider arguments made for the first time in Plaintiff's Objections. (Rec. Doc. 22 at 2).

**IV. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court has the power to enter "a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). On appeal, review of the Commissioner's denial of DIB benefits is limited to determining (1) whether substantial evidence exists in the record, as a whole, to support the findings of the Commissioner; and (2) whether the

Commissioner applied the proper legal standards in evaluating the evidence. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).

This Court must review the whole record to determine whether such evidence exists. *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986).  Findings by the Commissioner that are supported by substantial evidence are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Such findings must be affirmed despite alternative conclusions which this Court might also find to be substantially supported by evidence. *Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). This Court must not "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The ALJ is authorized to make findings supported by substantial evidence, regardless of whether other conclusions are permissible. *Arkansas*, 503 U.S. at 113 (1992). The obligation to resolve conflicts in the evidence is one for the Commissioner, not for this Court. *Id.*

Finally, in determining whether there is substantial evidence of disability, this Court must weight four elements including:

"(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) Plaintiff's subjective evidence of pain and disability; and (4) Plaintiff's age, education, and work history." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

## V. DISCUSSION

To be considered disabled, a claimant must demonstrate that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step process in determining whether a claimant is disabled within the meaning of the Act. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (citing 20 C.F.R. § 404.1520). The five-step evaluation process requires consideration of the following:

> (1) Whether the claimant is not working in substantial gainful employment;
>
> (2) Whether the claimant has a severe impairment;
>
> (3) Whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulation;
>
> (4) Whether the impairment prevents the claimant from doing past work; and

> (5) Whether the impairment prevents the
> claimant from doing any other work.

*Id.* The claimant carries the burden of proof under the first four steps of the inquiry. *Id.* If the claimant successfully carries this burden, the burden shifts to the Commissioner under the fifth step to demonstrate that the claimant is capable of performing alternative substantial gainful employment, which is available in the national economy. *Id.* Thereafter, the burden is on the claimant to rebut his or her capability to perform alternative work. *Id.* As mentioned, this Court must then weigh the four elements of proof in determining whether there is substantial evidence of disability. *Martinez*, 64 F.3d at 174.

"The ALJ held that [P]laintiff does not have an impairment that meets or medically equals a listed impairment under the regulations." (Rec. Doc. 9 at 14). The ALJ further found that Plaintiff, "retains the [RFC] to perform the full range of light work activity as defined in 20 C.F.R. § 404.1567(b)."[3] (Rec. Doc. 9 at 14-15). Finally, the ALJ found that Plaintiff "can perform her past relevant work as a customer service representative and

---

[3] This is designated as "occasional lifting and carrying of up to 20 pounds, frequent lifting and carrying of up to ten pounds, standing and/or walking for up to six hours during an eight-hour day, and sitting for up to six hours total during an eight-hour day.

collections clerk" and thus Plaintiff was denied DIB. (Rec. Doc. 9 at 16-17).

Plaintiff asserts that the ALJ applied the incorrect legal standard in assessing whether Plaintiff was limited to simple, repetitive tasks.[4] (Rec. Doc. 21-1 at 4). Plaintiff argues that because the ALJ found that Plaintiff has "mild mental limitations" and did not include those limitations in the RFC, the ALJ "failed to apply the § 416.945(e) and SSR 96-8p standard requiring inclusion in the RFC of all limitations caused by all of Plaintiff's impairments," including impairments that are non-severe. (Rec. Doc. 21-1 at 5).

Here, the ALJ considered Plaintiff's alleged mental impairments and found that there were "no limitations in activities

_____

[4] Plaintiff raises several new arguments in regard to the severity of her impairment, which were not present in her initial brief. First, Plaintiff argues for the first time that the ALJ was "playing doctor" in substituting her own opinion as to the nature of Plaintiff's medical illnesses and the finding that Plaintiff's depression is non-severe. (Rec. Doc. 21-1 at 2-3). Second, Plaintiff asserts for the first time that the State Agency Consultant's opinion concerning her depression should not have been assigned such great weight. (Rec. Doc. 21-1 at 4). Finally, Plaintiff argues that even if her depression was found to be non-severe, the limitations to simple, repetitive tasks should have been accounted for in the RFC. (Rec. Doc. 21-1 at 4-5). Plaintiff failed to raise any of these arguments in her initial brief. This Court will not consider issues when they are raised for the first time in Plaintiff's objective to the Magistrate's R&R. *United States v. Prince*, 868 F.2d 1379, 1386 (5th Cir. 1989).

of daily living, a mild limitation in social functioning, a mild limitation in concentration, persistence, or pace, and no episodes of decompensation." (Rec. Doc. 9 at 13-14). The Magistrate emphasized that the ALJ was not required to incorporate any specific limitations into his or her RFC statement on the basis that such limitations appear in a medical opinion. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). As the Magistrate highlighted, the ALJ has the discretion to choose whichever physician diagnosis contains the most support on the record, and to incorporate the limitations provided by that diagnosis into the RFC assessment. *Id.* In this instance, the Magistrate found that the ALJ properly considered both medical evidence and evidence of Plaintiff's daily activities and determined that such evidence fully supported the ALJ's RFC assessment. (Rec. Doc. 20 at 9). Plaintiff's argument that the ALJ's and the R&R's findings should not be upheld for failure to apply the correct legal standard is therefore directly refuted by Fifth Circuit precedent cited by the Magistrate. *See Muse*, 925 F.2d at 790.

As mentioned above, Plaintiff further maintains that "substantial evidence does not support the ALJ's and the R&R's findings that Plaintiff's depression is non-severe and that she is

not limited by it."[5] (Rec. Doc. 21-1 at 3). The ALJ considered a report submitted by Dr. J. Smith and gave great weight to his determination that "[Plaintiff] showed no significant signs of mood or anxiety related interference with social interaction or task performance." (Rec. Doc. 9 at 14). During the same evaluation, Plaintiff stated that she was able to manage her "daily activities" independently. (Rec. Doc. 9 at 14). Plaintiff asserts that Dr. Smith's functional statement supports her claim that she is limited to simple, repetitive tasks. (Rec. Doc. 20 at 6). The ALJ, however, found that given the absence of clinical indications, Dr. J. Smith's functional statement "[cannot] reasonably be interpreted as an accurate limitation of [P]laintiff's capacity." (Rec. Doc. 20 at 7). The ALJ also gave great weight to Plaintiff's daily activities in determining that Plaintiff was not limited to simple, repetitive tasks. (Rec. Doc. 9 at 14). When only part of a physician's opinion is supported by the record, it is proper for an ALJ not to afford weight to the unsupported portion of the opinion. *Jones v.* Heckler, 702 F.2d 616, 622 (5th Cir. 1983). Thus, Dr. J. Smith's functional statement does not refute the fact that the record contains substantial evidence to support the ALJ's and

---

[5] As noted above, Plaintiff's arguments as to the severity of her depression will not be addressed by this Court because these arguments were raised for the first time in Plaintiff's objections. *See Prince,* 868 F.2d at 1386.

the R&R's determination that Plaintiff was not limited to simple, repetitive tasks.

In addition, the Magistrate emphasized that Plaintiff stated that her daily activities included "helping to take care of her son, feeding him, giving him medicine, taking care of all of his needs, washing clothes and dishes, plus household duties and providing total care for her son." (Rec. Doc. 20 at 9). In this regard, the Magistrate emphasized that "[i]t is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability statute." *Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995). It has been established that any "inconsistencies between [Plaintiff's] testimony about [her] limitations and [her] daily activities [are] quite relevant in evaluating [her] credibility." *Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990). Finally, "a fact finder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1022-24 (5th Cir. 1990). Here, as stated by the Magistrate, the evidence concerning Plaintiff's medical history and Plaintiff's daily activities fully support the ALJ's RFC assessment. (Rec. Doc. 20 at 9). Thus, the ALJ's RFC assessment presents another basis for finding that substantial evidence supports the ALJ's determination that Plaintiff was not limited to simple, repetitive tasks.

17

Next, Plaintiff asserts that both her psychiatrist, Dr. Ahmed, and Dr. J. Smith determined that she had a GAF of 50. (Rec. Doc. 9 at 12, 261). Plaintiff argues that a GAF of 50 indicates that she has a serious impairment and that she is limited to carrying out simple, repetitive tasks. The GAF scale, however, "does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50746-01, 50764-65 (2000) (Social Security Administration Rules and Regulations); *See Hill v. Astrue*, No. H-08-3160, 2009 WL 2901530, at *7 (S.D. Tex. Sept. 1, 2009) (noting that "while potentially relevant, the GAF scale does not have a direct correlation to the severity requirements in the Listing. . . [P]laintiff's GAF score is not evidence of a severe impairment that precludes him from working"). Despite Plaintiff's assertions, the GAF scores assigned by Drs. Ahmed and J. Smith do not contradict the finding that there is substantial evidence to support the ALJ's determination that Plaintiff was not limited to simple, repetitive tasks.

Lastly, Plaintiff argues that the Appeals Council incorrectly found that new evidence submitted by Dr. Arretteig did not provide a basis for altering the ALJ's decision. (Rec. Doc. 20 at 11). Dr. Arretteig provided a bare-bones MRFC form with some missing explanations of Plaintiff's diagnoses. (Rec. Doc. 20 at 11). Additionally, Plaintiff fails to provide this Court with treatment notes from Dr. Arretteig. (Rec. Doc. 20 at 11). It has been

established that forms lacking in-depth analysis are afforded little weight in this Court. *Perez*, 415 F.3d at 466 (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Moreover, the ALJ is entitled to reject such a conclusory opinion of disability without reference to the factors used to evaluate a typical medical opinion. *Frank v. Barnhart*, 326 F. 3d 618, 620 (5th Cir. 2003). Finally, the Magistrate found that Dr. Arretteig's opinion did not relate to the time period under consideration by the ALJ, thus this medical opinion would not change the ALJ's conclusion in any way. (Rec. Doc. 20 at 13). For these reasons, Dr. Arretteig's opinion will not be considered by this Court and does not conflict with the finding that there is substantial evidence to support the ALJ's determination that Plaintiff is not limited to simple, repetitive tasks.

Based upon Plaintiff's aforementioned assertions, objective medical evidence, and evidence of Plaintiff's daily activities, the Magistrate applied the proper legal standards in determining that substantial evidence supports the ALJ's finding that Plaintiff is not limited to simple, repetitive tasks, and that she should therefore be denied DIB. (Rec. Doc. 20). In reviewing the ALJ's finding, a court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey*, 230 F.3d at 135. The function of the district court on judicial review is limited to determining whether there

is "substantial evidence" in the record to support the final decision of the Commission, as trier of fact, and whether the appropriate legal standards were used to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). If the Commissioner's findings are supported by substantial evidence, the district court must affirm them. *Martinez*, 64 F.3d at 173. Accordingly, the ALJ applied the proper legal standards in determining that Plaintiff is not limited to simple, repetitive tasks. (Rec. Doc. 20). Further, the record contains substantial evidence supporting the ALJ's decision.

## VI. CONCLUSION

As summarized by the Magistrate, substantial evidence supports the ALJ's finding that Plaintiff is not limited to simple, repetitive tasks. Furthermore, the Magistrate and the ALJ applied the proper legal standards in determining that Plaintiff is not limited to simple, repetitive tasks and in denying Plaintiff DIB. For the foregoing reasons,

**IT IS ORDERED** that the Plaintiff's Objections are **OVERRULED**.

**IT IS FURTHER ORDERED** that Magistrate's R&R is **ADOPTED**.

**IT IS FURTHER ORDERED** that the SSA's motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment is **DENIED** and all of Plaintiff's claims **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 7th day of April, 2016.

UNITED STATES DISTRICT JUDGE